## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIA DIFRANCO, as the Independent Administrator of the ESTATE OF MARCO DIFRANCO, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | Jury Demanded |
| CITY OF CHICAGO, a municipal corporation, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Maria DiFranco, as the Independent Administrator of the Estate of Marco DiFranco, deceased, by and through her attorneys, Steven M. Laduzinsky and Natalie K. Wilkins of Laduzinsky & Associates, P.C., and for her Complaint against Defendant, the City of Chicago, a municipal corporation, states as follows:

## PARTIES

1.  Plaintiff, Maria DiFranco ("Plaintiff"), is the Independent Administrator of the Estate of Marco DiFranco, deceased ("Estate"). Plaintiff was appointed as the Independent Administrator of the Estate by the Circuit Court of Cook County on June 25, 2020. (Exhibit A). Marco DiFranco ("Decedent") was an individual employed by the City of Chicago as a police officer for the Chicago Police Department at the time of his death on April 2, 2020.

2.  Defendant, City of Chicago ("Defendant"), is a municipal corporation located in the State of Illinois, County of Cook. At all relevant times, the Chicago Police Department ("CPD") was the law enforcement agency of Defendant.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the Constitution and laws of the United States for violations of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* (collectively, "ADA"). This Court may also exercise supplemental jurisdiction over Plaintiff's state law claims under the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.* ("IHRA"), and the Illinois Wrongful Death Act, 740 ILCS 180/0.01 *et seq.* ("WDA"), pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     On September 18, 2020, Plaintiff timely filed a charge of discrimination against Defendant with the Illinois Department of Human Rights ("IDHR"), alleging discrimination based on Decedent's disability, which was also cross-filed with the Equal Employment Opportunity Commission ("EEOC").

6.     On January 4, 2021, the IDHR issued a Notice of Opt Out of the Investigative and Administrative Process, Right to Commence an Action in Circuit Court or other Appropriate Court of Competent Jurisdiction, and Order of Administrative Closure ("IDHR Notice"), granting Plaintiff ninety-five (95) days to file a lawsuit against Defendant under state law in federal or state court. (Exhibit B).

7.     On March 15, 2021, the EEOC issued a Dismissal and Notice of Rights ("EEOC Notice"), granting Plaintiff ninety (90) days to file a lawsuit against Defendant under federal law in federal or state court. (Exhibit C).

8.     Plaintiff's Complaint has been filed within ninety-five (95) days of the IDHR Notice and ninety (90) days of the EEOC Notice, and Plaintiff has exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

9.     At all relevant times, Decedent suffered from cystic fibrosis, a permanent and progressive lung disease, and cystic fibrosis-related diabetes, a common comorbidity in cystic fibrosis, (collectively, Decedent's "Conditions").

10.     At all relevant times, Decedent was employed by Defendant and worked for the CPD as a police officer.

11.     Decedent notified Defendant of his Conditions when he began working for the CPD in approximately May of 1998.

12.     In approximately 2005, Decedent was assigned to the Narcotics Division, which was based in the Homan Square facility located at 3340 W. Fillmore Street, Chicago, Illinois 60624 ("Homan Square Facility").

13.     As a police officer in the Narcotics Division, Decedent was required to perform work in the Homan Square Facility, as well as in the field which include the streets of the City of Chicago.

14.     In January of 2020, a communicable respiratory virus, COVID-19, emerged in the United States.

15.     Individuals infected by COVID-19 experienced serious, long-term complications in some cases, including inflammation and clogged air sacs in the lungs, restriction of the body's oxygen supply, blood clots, organ failure, liver damage, intestinal damage, heart inflammation, neurological malfunction, and acute kidney disease, among others.

16.     According to the Centers for Disease Control and Prevention ("CDC"), individuals with underlying medical conditions, such as lung disease and diabetes, were also at an increased risk for severe illness from COVID-19, including death.

17.     On January 31, 2020, the United States Department of Health and Human Services declared a national public health emergency as a result of COVID-19.

18.     By the end of February of 2020, transmission of COVID-19 began accelerating throughout the United States, including Chicago, Illinois.

19.     On March 9, 2020, Illinois Governor JB Pritzker issued a Gubernatorial Disaster Proclamation, applying to all Illinois counties and cities, including the city of Chicago.

20.     On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a global pandemic.

21.     On March 13, 2020, the President of the United States declared a National Emergency in response to the COVID-19 outbreak.

22.     On March 19, 2020, at approximately 2:38 p.m., the Chief Communications Officer for the CPD, Anthony Guglielmi, emailed all CPD employees, including Decedent, advising of the CDC's guidance and requesting that employees with an underlying condition, such as lung disease and diabetes, contact the Chicago Police Medical Services Section ("Medical Section") to discuss next steps and work alternatives ("March 19, 2020 Email"). (Exhibit D).

23. The Medical Section is the office of the CPD that oversees and approves the medical and sick leave of CPD employees and is also an agent of Defendant.

24. According to the March 19, 2020 Email, the Medical Section could be contacted "24/7". (Exhibit D).

25. The March 19, 2020 Email further advised sworn members, such as Decedent, to have their healthcare providers provide documentation related to their condition to the Medical Section. (*Id*.).

26. On March 19, 2020, at approximately 4:33 p.m., Decedent's doctor sent a letter to the Medical Section advising that Decedent was at a higher risk of developing serious illness from COVID-19 due to his cystic fibrosis and cystic fibrosis-related diabetes and requesting a reasonable accommodation, including accommodations for remote work or work alternatives.

27. Without medical leave approval or authorization for a reasonable accommodation from the Medical Section, Decedent was required to and continued to report for duty and work at the Homan Square Facility and in the field while his request for a reasonable accommodation was pending.

28. On March 20, 2020, Decedent called the Medical Section one (1) time regarding his request for a reasonable accommodation and was advised that someone from the Medical Section would call him back.

29. Decedent did not receive a call back from the Medical Section on March 20, 2020.

30. On March 21, 2020, Decedent called the Medical Section approximately six (6) times regarding his request for a reasonable accommodation, however, the Medical Section did not answer his calls.

31.     The Medical Section's voicemail box was also full, so Decedent was unable to leave a voicemail.

32.     On March 21, 2021, Decedent also emailed the Medical Section an executed Certification of Medical Condition form, certifying that he had a serious chronic medical condition that placed him at an increased risk for contracting COVID-19 and suffering from serious complications from COVID-19. (Exhibit E).

33.     Later that day, on March 21, 2020, Decedent spoke to Officer Bishop, a non-medically trained individual at the Medical Section, who advised Decedent that one of the doctors for Defendant ("City Doctor") was going to review Decedent's request for a reasonable accommodation and contact him.

34.     Decedent was not contacted by a City Doctor on March 21, 2020 or March 22, 2020.

35.     On March 23, 2020, Decedent reported for duty, as he still had not been contacted by a City Doctor regarding his request for a reasonable accommodation or received clearance to take medical leave.

36.     While at work on March 23, 2020, Decedent received a call from his commanding officer, Commander Ronald Kimble ("Commander Kimble"), the commander of the Narcotics Division at that time, inquiring about Decedent's request for a reasonable accommodation, which Commander Kimble had learned about from the CPD's Human Resources Department.

37.     During said call, Commander Kimble berated Decedent for submitting a request for a reasonable accommodation and accused Decedent of trying to draw attention to himself.

38.     Decedent attempted to explain the severity of his Conditions, including his cystic fibrosis and cystic fibrosis-related diabetes, to Commander Kimble, even telling Commander

Kimble that he had lost a sister with the same conditions after she was infected by a communicable virus.

39.     In response, Commander Kimble continued to berate Decedent for requesting a reasonable accommodation and told Decedent to just retire or go on disability as opposed to seeking medical leave or being placed on sworn medical roll, which has a negative stigma amongst the CPD.

40.     Commander Kimble then ordered Decedent to advise his sergeant of his request for a reasonable accommodation and Conditions.

41.     At the time, Decedent's sergeant was Sergeant Mark Vanek ("Sergeant Vanek").

42.     After Decedent's phone call with Commander Kimble on March 23, 2020, Decedent called Sergeant Vanek and advised him of his request for a reasonable accommodation and Conditions.

43.     Decedent then proceeded to go the Medical Section to inquire about his request for a reasonable accommodation, as he still had not been contacted by a City Doctor.

44.     While at the Medical Section on March 23, 2020, Decedent was once again advised by non-medically trained individuals at the Medical Section that a City Doctor was going to review Decedent's request for a reasonable accommodation and contact him.

45.     During the period of March 19, 2020 through March 27, 2020, Decedent was not contacted by a City Doctor regarding his request for a reasonable accommodation or given clearance to take medical leave by Defendant or any of its agents, so Decedent continued to work and report for duty during this time as he was required to do under CPD policy.

46.     During the period of March 19, 2020 and March 27, 2020, Decedent continued to request and inquire about his requests for a reasonable accommodation with the CPD and the Medical Section.

47.     During the period of March 19, 2020 and March 27, 2020, Decedent worked in the Narcotics Division's office located in the Homan Square Facility on several occasions.

48.     During the period of March 19, 2020 through March 27, 2020, Defendant continued to utilize a biometric palm scanning system that required all individuals entering the Homan Square Facility to place their palm face down on a palm scanner.

49.     There were numerous departments and units of the CPD located in the Homan Square Facility, and hundreds of individuals would access the building and use the palm scanners on a daily basis.

50.     During the period of March 19, 2020 through March 27, 2020, individuals were still required to utilize the biometric palm scanning system every time they entered the building, and there were no protocols in place for sanitizing the scanner in between uses.

51.     Decedent had to and did use the biometric palm scanning system to access the Homan Square Facility on multiple occasions during the period of March 19, 2020 through March 27, 2020.

52.     During this period, Decedent also had to take the communal elevators on multiple occasions and came into contact with numerous individuals from other departments and units who were not wearing masks.

53.     On or about March 28, 2020, Decedent began experiencing symptoms associated with COVID-19.

54.     Around the same time, Decedent was advised that three (3) individuals from the narcotics unit who Decedent had been in contact with while at the Homan Square Facility that week tested positive for COVID-19, along with at least one other detective in the building.

55.     On March 29, 2020, Decedent tested positive for COVID-19 and was hospitalized.

56.     On April 2, 2020, Decedent died as a result of complications after contracting COVID-19 while working in the line of duty.

57.     Between the period of March 29, 2020 and April 2, 2020, Decedent continued to make reasonable requests for accommodation and was continuously wholly ignored by Defendant and its agents.

58.     Decedent's death was classified as in the line of duty by the CPD.

59.     During the period of March 19, 2020 through April 2, 2020, Decedent made numerous attempts to contact the CPD and Medical Section during this period, but his efforts were futile.

60.     As of April 2, 2020, Decedent had not been contacted by a City Doctor regarding his request for a reasonable accommodation or received approval for his request for a reasonable accommodation.

61.     Despite following up with the CPD and the Medical Section on several occasions and notifying several agents of the CPD and the Medical Section of his underlying conditions and comorbidities, Decedent's request for a reasonable accommodation was wholly ignored by Defendant and its agents.

62.     During the period of March 19, 2020 through April 2, 2020, Defendant and the CPD granted other officers' and employees' requests for reasonable accommodations, even those who submitted their requests after Decedent.

63. During the period of March 19, 2020 through April 2, 2020, Decedent's request for a reasonable accommodation was pending and effectively denied.

64. Defendant was aware of Decedent's Conditions and his request for a reasonable accommodation, and Defendant's failure to take any action with respect to Decedent's request amounts to a deliberate intent to cause harm, or, alternatively, shows an utter indifference to or conscious disregard for the safety of Decedent.

65. Defendant's conduct constitutes an unjustifiably inadequate response to a known danger and threat.

### COUNT I
### FAILURE TO PROVIDE A REASONABLE ACCOMODATION
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
### 42 U.S.C. §§ 12111, *et seq.*

66. Plaintiff reasserts and realleges paragraphs 1 through 65 of Plaintiff's Complaint as paragraph 66 of Count I of Plaintiff's Complaint as though fully set forth herein.

67. At all relevant times, Defendant was required to comply with the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq.*

68. At all relevant times, Defendant was a "covered entity" as defined under section 12111(2) of the ADA and an "employer" as defined under section 12111(5)(a) of the ADA. *Id.* § 12111(2), (5)(a).

69. At all relevant times, Decedent was an "employee" as defined by section 12111(4) of the ADA, as Decedent was employed as a police officer for the CPD, the law enforcement agency of Defendant. *Id.* § 12111(4).

70. At all relevant times, Decedent was an individual with a "disability" as defined under section 12102(a) and (b) of the ADA, as Decedent's Conditions, including cystic fibrosis and cystic fibrosis-related diabetes, substantially limited and impaired one or more major life

10

activities of Decedent, including without limitation respiratory impairment, and there was a record of such impairment. *Id*. § 12102(a)-(b).

71.     Under section 12102(4)(A), the definition of "disability" should be construed in favor of broad coverage of individuals to the maximum extent permitted under the ADA. *Id*. § 12102(4)(A).

72.     At all relevant times, Decedent was a "qualified individual" as defined under section 12111(8) of the ADA, as Decedent could perform the essential functions of his employment position, with or without reasonable accommodation. *Id*. § 12111(8).

73.     Under section 12112(a) of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

74.     Under section 12112(b)(5)(A) of the ADA, the term "discriminate against a qualified individual" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A).

75.     In violation of section 12112(a) of the ADA, Defendant, by and through its agents, discriminated against Decedent by failing to make reasonable accommodations to the known physical limitations of Decedent, including without limitation as alleged in paragraphs 9 through 65 of Plaintiff's Complaint.

76.     As a result of Defendant's conduct, Decedent was forced to continue working without a reasonable accommodation, contracted COVID-19 while working in the line of duty for the CPD and died.

77.     As a result of Defendant's discriminatory conduct, Decedent suffered damages, including without limitation emotional distress, lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff, Maria DiFranco, as the Independent Administrator for the Estate of Marco DiFranco, Deceased, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, the City of Chicago, a municipal corporation, and grant the following relief: (a) compensatory damages; (b) the cost of reasonable attorney fees, including litigation expenses, and costs; and (c) any further relief this Court deems just and proper.

**COUNT II**
**LIMITING, SEGREGATING OR CLASSIFYING AN EMPLOYEE IN VIOLATION OF**
**THE AMERICAN WITH DISABILITIES ACT**
**42 U.S.C. §§ 12111,** *et seq.*

78.     Plaintiff restates and realleges paragraphs 1 through 65 of Plaintiff's Complaint as paragraph 78 of Count II of Plaintiff's Complaint as though fully set forth herein.

79.     At all relevant times, Defendant was required to comply with the provisions of the ADA, 42 U.S.C. §§ 12101, *et seq.*

80.     At all relevant times, Defendant was a "covered entity" as defined under section 12111(2) of the ADA and an "employer" as defined under section 12111(5)(a) of the ADA. *Id.* § 12111(2), (5)(a).

81.     At all relevant times, Decedent was an "employee" as defined by section 12111(4) of the ADA, as Decedent was employed as a police officer for the CPD, the law enforcement agency of Defendant. *Id.* § 12111(4).

82.     At all relevant times, Decedent was an individual with a "disability" as defined under section 12102(1)(A) and (B) of the ADA, as Decedent's cystic fibrosis and cystic fibrosis-related diabetes substantially limited one or more major life activities of Decedent, including

without limitation respiratory impairment, and there was a record of such impairment. *See Id*. § 12102(1)(A)-(B), (2)(B).

83.     At all relevant times, Decedent was also an individual with a "disability" as defined under section 12102(1)(C) of the ADA, as Decedent was regarded as having such an impairment and was subjected to adverse action including, but not limited to, limitation, segregation, classification, disparate treatment, and harassment because of his actual or perceived impairment. *Id*. § 12102(1)(C), (3).

84.     At all relevant times, Decedent was a "qualified individual" as defined under section 12111(8) of the ADA, as Decedent could perform the essential functions of his employment position, with or without reasonable accommodation. *See Id*. § 12111(8).

85.     Under section 12112(a) of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

86.     Under section 12112(b)(1), the term "discriminate against a qualified individual" includes limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(b)(1).

87.     Under section 12112(b)(3), the term "discriminate against a qualified individual" includes utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability or that perpetuate the discrimination of others who are subject to common administrative control. 42 U.S.C. § 12112(b)(3).

88.     In violation of section 12112(a) of the ADA, Defendant, by and through its agents, discriminated against Decedent in the following ways:

   a.   Limiting, segregating, and/or classifying Decedent in a way that adversely affected the opportunities or status of Decedent because of his disability, including without limitation as alleged in paragraphs 22 through 44 of Plaintiff's Complaint;

   b.   Utilizing standards, criteria, and/or methods of administration that have the effect of discrimination on the basis of disability or perpetuate the discrimination of others who are subject to common administrative control, including without limitations as alleged in paragraphs 22 through 44 of Plaintiff's Complaint.

89.     By limiting, segregating, or classifying Decedent, Defendant adversely impacted Decedent's opportunities and status.

90.     As a result of Defendant's discriminatory conduct, Decedent suffered damages, including without limitation emotional distress, lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff, Maria DiFranco, as the Independent Administrator for the Estate of Marco DiFranco, Deceased, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, the City of Chicago, a municipal corporation, and grant the following relief: (a) compensatory damages; (b) the cost of reasonable attorney fees, including litigation expenses, and costs; and (c) any further relief this Court deems just and proper.

## COUNT III
## FAILURE TO MAKE A REASONABLE ACCOMODATION
## IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT –
## WILLFUL AND WANTON MISCONDUCT
## 775 ILCS 5/1-101, *et seq.*

91.     Plaintiff reasserts and realleges paragraphs 1 through 65 of Plaintiff's Complaint as paragraph 91 of Count III of Plaintiff's Complaint as though fully set forth herein.

92. At all relevant times, Defendant and its agents were required to comply with the provisions of the IHRA, 775 ILCS 5/1-101, *et seq*.

93. At all relevant times, Defendant was an "employer" as defined under section 2-101(B)(1)(c) of the IHRA, as Defendant was a municipal corporation and the principal of the governmental units and agencies alleged in Plaintiff's Complaint, including the CPD and the Medical Section. *Id*. § 2-101(B)(1)(c).

94. At all relevant times, Decedent was an "employee" of Defendant as defined under section 2-101(A)(1)(a) of the IHRA, as Decedent was employed as a police officer for the CPD, performing services for renumeration within the State of Illinois for the CPD, the law enforcement agency of Defendant. *Id*. § 2-101(A)(1)(a).

95. At all relevant times, Decedent was an individual with a "disability" as defined under section 1-103(I)(1) of the IHRA, as Decedent's Conditions, including his cystic fibrosis and cystic fibrosis-related diabetes, were determinable physical characteristics of Decedent resulting from the disease and were unrelated to Decedent's ability to perform the duties of his job as a CPD officer. *Id*. § 1-103(I)(1).

96. At all relevant times, Decedent's disability as defined under section 1-103(I)(1) of the IHRA was unrelated to his ability to perform the functions of the job he was hired to perform, as Decedent could perform the essential functions of his employment position, with or without reasonable accommodation. *Id*.

97. Under section 2-102 of the IHRA, "[i]t is a civil rights violation for any employer to refuse to hire, to segregate, to engage in harassment as defined in subsection (E-1) of Section 2-101, or to act with respect to recruitment, hiring, promotions, renewal of employment, selection

for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." *Id*. § 2-102.

98. In violation of section 2-102 of the IHRA, Defendant failed to provide or make any reasonable efforts to provide a reasonable accommodation to the known physical limitations and disabilities of Decedent, including without limitations as alleged in paragraphs 22 through 65 of Plaintiff's Complaint.

99. As a result of Defendant's conduct, Decedent was forced to continue working without a reasonable accommodation, contracted COVID-19 while working in the line of duty and died.

100. Defendant's conduct, by and through its agents, was willful and wanton, as Defendant portrayed an actual or deliberate intention to harm Decedent evidenced by Commander Kimble's berating of Decedent's request for accommodation, Defendant's failure to engage in the interactive process in responding to Decedent's request for reasonable accommodation, and Defendant's overall conscious disregard in responding to Decedent's request for reasonable accommodation.

101. Defendant's conduct, by and through its agents, was willful and wanton as Defendant portrayed an utter indifference to or conscious disregard for Decedent's safety and life.

102. As a result of Defendant's conduct, Decedent suffered damages, including without limitation emotional distress, lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff, Maria DiFranco, as the Independent Administrator for the Estate of Marco DiFranco, Deceased, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, the City of Chicago, a municipal corporation, and grant the following

relief: (a) compensatory damages; (b) reasonable attorney fees and costs; and (c) any further relief this Court deems just and proper.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT – WILLFUL AND WANTON MISCONDUCT
## 775 ILCS 5/1-101, *et seq.*

103.     Plaintiff reasserts and realleges paragraphs 1 through 65 of Plaintiff's Complaint as paragraph 103 of Count IV of Plaintiff's Complaint as though fully set forth herein.

104.     At all relevant times, Defendant and its agents were required to comply with the provisions of the IHRA, 775 ILCS 5/1-101, *et seq*.

105.     At all relevant times, Defendant was an "employer" as defined under section 2-101(B)(1)(c) of the IHRA, as Defendant was a municipal corporation and the principal of the governmental units and agencies alleged in Plaintiff's Complaint, including the CPD and the Medical Section. *Id*. § 2-101(B)(1)(c).

106.     At all relevant times, Decedent was an "employee" of Defendant as defined under section 2-101(A)(1)(a) of the IHRA, as Decedent was employed as a police officer for the CPD, performing services for renumeration within the State of Illinois for the CPD, the law enforcement agency of Defendant. *Id*. § 2-101(A)(1)(a).

107.     At all relevant times, Decedent was an individual with a "disability" as defined under section 1-103(I)(1) of the IHRA, as Decedent's cystic fibrosis and cystic fibrosis-related diabetes were determinable physical characteristics of Decedent resulting from the disease and were unrelated to Decedent's ability to perform the duties of his job as a CPD officer. *Id*. § 1-103(I)(1).

108.     At all relevant times, Decedent's disability as defined under section 1-103(I)(1) of the IHRA was unrelated to his ability to perform the functions of the job he was hired to perform,

as Decedent could perform the essential functions of his employment position, with or without reasonable accommodation. *Id.*

109. Under section 2-102 of the IHRA, "[i]t is a civil rights violation for any employer to refuse to hire, to segregate, to engage in harassment as defined in subsection (E-1) of Section 2-101, or to act with respect to recruitment, hiring, promotions, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." *Id.* § 2-102.

110. In violation of section 2-102 of the IDHR, Defendant discriminated against Decedent in the following ways:

    a. Limiting, segregating, and/or classifying Decedent in a way that adversely affected the opportunities or status of Decedent because of his disability, including without limitation as alleged in paragraphs 22 through 44 of Plaintiff's Complaint;

    b. Engaging in harassment on the basis of disability with the purpose or effect of creating an intimidating, hostile, or offensive working environment as alleged in paragraphs 22 through 44 of Plaintiff's Complaint;

    c. Utilizing standards, criteria, and/or methods of administration that have the effect of discrimination on the basis of disability or perpetuate the discrimination of others who are subject to common administrative control, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint; and

    d. Acting on the basis of unlawful discrimination with respect to terms or conditions of Decedent's employment, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint.

111. As a result of Defendant's conduct, Decedent was subject to unlawful discrimination in the workplace with respect to the terms, privileges, and conditions of employment.

112. Defendant's conduct, by and through its agents, was willful and wanton, as Defendant portrayed an actual or deliberate intention to harm Decedent evidenced by Commander

Kimble's berating of Decedent's request for accommodation, Defendant's failure to engage in the interactive process in responding to Decedent's request for reasonable accommodation, and Defendant's overall conscious disregard in responding to Decedent's request for reasonable accommodation.

113. Defendant's conduct, by and through its agents, was willful and wanton as Defendant portrayed an utter indifference to or conscious disregard for Decedent's safety and life.

114. As a result of Defendant's discriminatory conduct, Decedent suffered damages, including without limitation emotional distress, lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff, Maria DiFranco, as the Independent Administrator for the Estate of Marco DiFranco, Deceased, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, the City of Chicago, a municipal corporation, and grant the following relief: (a) compensatory damages; (b) reasonable attorney fees and costs; and (c) any further relief this Court deems just and proper.

## COUNT V
### VIOLATION OF THE ILLINOIS WRONGFUL DEATH ACT –
### WILLFUL AND WANTON MISCONDUCT
### 740 ILCS 180/0.01, *et seq.*

115. Plaintiff reasserts and realleges paragraphs 1 through 65 of Plaintiff's Complaint as paragraph 115 of Count V of Plaintiff's Complaint as though fully set forth herein.

116. Plaintiff is the Independent Administrator of the Estate and personal representative of Decedent.

117. At all relevant times, Decedent was employed by and worked for the CPD, one of Defendant's agencies.

118.    As Decedent's employer, Defendant owed Decedent a duty of reasonable care to maintain a safe and healthy workplace, maintain a workplace free from discrimination, harassment, and retaliation, protect Decedent's confidential health information, and provide a reasonable accommodation based on Decedent's disability and the known threat and risk of serious harm posed by COVID-19 to high-risk individuals, such as Decedent.

119.    Defendant further voluntarily assumed the duty to provide guidance to, assist, and discuss next steps with CPD employees with underlying health conditions placing them at a higher risk of serious illness from COVID-19 based on Defendant's email of March 19, 2020.

120.    Defendant further voluntarily assumed the duty to monitor the health and wellbeing of CPD employees based on the Medical Section's change of policy to being available 24/7.

121.    Defendant breached its duties in the following ways:

   a.   Failing to maintain a safe and healthy workplace, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint;

   b.   Failing to maintain a workplace free from discrimination, harassment, and retaliation, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint;

   c.   Failing to protect Decedent's confidential health information, including without limitation as alleged in paragraphs 36 through 44 of Plaintiff's Complaint;

   d.   Failing to provide Decedent with a reasonable accommodation, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint; and

   e.   Failing to provide guidance to, assist, and discuss next steps with Decedent, including without limitation as alleged in paragraphs 22 through 65 of Plaintiff's Complaint.

122.    As a result of Defendant's breaches, Decedent was forced to continue working without a reasonable accommodation, contracted COVID-19 while working in the line of duty and died.

123. The conduct of Defendant, by and through its agents, was willful and wanton, as Defendant portrayed an actual or deliberate intention to harm Decedent by berating Plaintiff's request for accommodation, failing to engage in the interactive process, and consciously disregarding responding to Decedent's request for reasonable accommodation.

124. Defendant's conduct, by and through its agents, was willful and wanton, as Defendant portrayed an utter indifference to or conscious disregard for Decedent's safety.

125. As a result of Defendant's breaches, Decedent suffered damages, including without limitation emotional distress, lost wages and benefits, and the cost of bringing this action.

WHEREFORE, Plaintiff, Maria DiFranco, as the Independent Administrator for the Estate of Marco DiFranco, Deceased, respectfully requests this Honorable Court enter a judgment in her favor and against Defendant, the City of Chicago, a municipal corporation, and grant the following relief: (a) compensatory damages; and (b) any further relief this Court deems just and proper.

Respectfully submitted,

**MARIA DIFRANCO, as the Independent Administrator of the ESTATE OF MARCO DIFRANCO**

By:   /s/ Steven M. Laduzinsky
        One of her attorneys

Steven M. Laduzinsky (ARDC #: 6193407)
Natalie K. Wilkins (ARDC #: 6333548)
Laduzinsky & Associates, P.C.
216 S. Jefferson Street, Suite 301
Chicago, Illinois 60661
(312) 424-0700
admin@laduzinsky.com