UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA DIFRANCO, as the Independent Administrator of the ESTATE OF MARCO DIFRANCO, Deceased,<br>        Plaintiff<br><br>v.<br><br>CITY OF CHICAGO,<br>        Defendant | No. 21 CV 1600<br><br>Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Maria DiFranco, as the Administrator of the estate for Marco DiFranco, and the Defendant, City of Chicago ("Chicago"), filed cross-motions for summary judgment in this wrongful death and failure to accommodate action. (R. 129; R. 132.) For the reasons set forth below, Chicago's motion is granted as to all remaining counts, and the plaintiff's motion is denied.

**BACKGROUND**

This is a lawsuit for wrongful death and failure to accommodate brought by the widow of Officer Marco DiFranco, a Chicago Police Officer who died of COVID-19. (R. 1 ¶¶ 1, 3, 56.)[1] The plaintiff asserts that Chicago failed to respond to Officer DiFranco's request for an accommodation at the start of the COVID-19 pandemic in late March of 2020. (*Id.* ¶ 63.) This failure allegedly caused Officer DiFranco to

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

contract COVID-19 and pass away in early April 2020. (*Id.* ¶ 56.) The plaintiff brings claims for failure to accommodate and discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Illinois Human Rights Act ("IHRA") 775 ILCS 5/1-101 *et seq.*, along with a wrongful death claim under the Illinois Wrongful Death Act, 740 ILCS 180/0.01 *et seq.* ("IWDA"). (*Id.* ¶¶ 66–125).

Chicago moved to dismiss, and another court in this district terminated the state and federal discrimination claims (Counts II and IV). *DiFranco v. City of Chicago*, 589 F.Supp.3d 909, 919 (N.D. Ill. 2022). Chicago later moved for judgment on the pleadings but was unsuccessful (R. 111.) Now, Chicago moves for summary judgment on the plaintiff's surviving claims for failure to accommodate under the ADA (Count I), the IHRA (Count III), and the IWDA (Count V). The plaintiff seeks partial summary judgment on her ADA claim (Count I).

The following background facts are taken from the parties' Local Rule 56.1 Statements of Undisputed Facts. Officer DiFranco was an undercover narcotics officer based out of the Chicago Police Department's ("CPD") Homan Square location. (R. 134, Plaintiff's Statement of Undisputed Facts ("PSOF") ¶¶ 15, 18; R. 130, Defendant's Statement of Undisputed Facts ("DSOF") ¶¶ 6, 7.) Officer DiFranco suffered from cystic fibrosis and cystic fibrosis related diabetes; prior to March 2020, he had not previously sought an accommodation for either condition. (PSOF ¶ 14; DSOF ¶¶ 9–10.)

On March 19, 2020, CPD emailed its employees instructions regarding how to request alternative work accommodations in light of the onset of the COVID-19

pandemic. (PSOF ¶¶ 23–24; DSOF ¶ 38). That same day, in accordance with these instructions, Officer DiFranco had his doctor submit a letter outlining his medical conditions and the heighted risks of COVID-19 to individuals with cystic fibrosis. (PSOF ¶ 38, 40; DSOF ¶ 52, 55.)

From here, the parties dispute the course and significance of events. The plaintiff asserts that Officer DiFranco's request was never followed up on, and he remained tasked with his normal narcotics duties until he fell ill with COVID-19 on March 26, 2020, leading to his death on April 2, 2020 (PSOF ¶¶ 57–60.) The plaintiff also asserts that, after his death, the CPD prepared a backdated or forged exposure report documenting that Officer DiFranco had been exposed to COVID-19 the morning of March 19, 2020. (*Id.* ¶ 53.)

In contrast, Chicago asserts that, no later than March 23, 2020, Sergeant Vanek, Officer DiFranco's immediate supervisor, assigned him to a one-man car and tasked him with inspecting city infrastructure. (DSOF ¶¶ 65, 68, 73.) Chicago further asserts that in conversations with both CPD Medical Section Captain Sanchez and Sergeant Vanek, Officer DiFranco expressed satisfaction with this assignment as an appropriate accommodation. (*Id.*) Last, Chicago asserts that the COVID-19 exposure report was prepared on March 19, 2020, but not submitted to CPD's medical section until April 2, 2020. (*Id.* ¶ 84.)

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

3

322 (1986). "A fact is 'material' if it is one identified by the law as affecting the outcome of the case." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 722 (7th Cir. 2015). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court "construe[s] all facts and draw[s] all reasonable inferences in the nonmoving party's favor, but the moving party may prevail 'by showing an absence of evidence to support' the nonmoving party's claims." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (quoting *Tyburski v. City of Chicago.*, 964 F.3d 590, 597 (7th Cir. 2020)). While the Court must give the nonmoving party "the benefit of reasonable inferences from the evidence," it does not construe "speculative inferences in his favor." *White v. City of Chicago.*, 829 F.3d 837, 841 (7th Cir. 2016). "Where, as here, the parties file cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made." *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017) (citing *Dunnet Bay Constr. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015)).

## ANALYSIS

The parties cross-moved for summary judgment. Chicago seeks summary judgment on all counts on procedural and substantive grounds. The Court will first address the procedural arguments related to preemption and exhaustion before turning to Chicago's arguments on the merits.

4

On preemption and exhaustion, Chicago argues that Plaintiff's IWDA claim is barred by the Illinois Pension Code and the Workers' Occupational Disease Act ("ODA"). (R. 135 at 9.) Chicago also argues the ODA bars the plaintiff's IHRA claim. (*Id.* at 13.) Finally, Chicago argues that the plaintiff failed to properly exhaust her ADA and IHRA claims before the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR"). (*Id.* at 18.)

On the merits, Chicago argues that it did provide a reasonable accommodation to Officer DiFranco, entitling it to summary judgment on the ADA and IHRA claims. (*Id.* at 23.) Chicago also argues that it is entitled to summary judgment on the IWDA claim because the plaintiff cannot show a link between its conduct and Officer DiFranco's exposure to COVID-19. (*Id.* at 16.)

Last, the Court will address the plaintiff's motion for partial summary judgment as to her ADA claim. (R. 132.)

I. **THE DEFENDANT'S PREEMPTION AND EXHAUSTION ARGUMENTS**

   A. **The Plaintiff's Claim Under the Illinois Wrongful Death Act is Not Barred by the Illinois Pension Code.**

On its motion to dismiss, Chicago's argument that the Illinois Pension Code, 40 ILCS 5/22-306 and 307 bars the plaintiff's IWDA claim, was rejected. *DiFranco*, 589 F. Supp. 3d at 917–19. "[A] ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it." *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004). Here, Chicago makes no such showing, but merely repeats the same rejected arguments. (R. 135 at 9–10.); *cf.*, *DiFranco*, 589 F. Supp. 3d at 917–19. Indeed, Chicago does not even mention the ruling on its motion

5

to dismiss, nor show a good reason for departing from it. (*See* R. 135 at 9–10.) Accordingly, the Court will not depart from the prior ruling in this case and denies Chicago's motion for summary judgment on this ground.

### B. The ODA Does Not Bar Plaintiff's IWDA Claim.

Chicago next argues that the Plaintiff's IWDA claim is barred by the ODA (R. 135 at 13.) The ODA, modeled after the IWCA, is an exclusive remedy statute for diseases arising out of employment. *Daniels v. Venta Corp.*, 221 N.E.3d 503, 508 (Ill. App. Ct. 2022). The exclusive remedy of the ODA only applies if the employer is covered by the statute. 820 ILCS 310/3. Chicago argues the mandatory provision, 310/2(a), applies. (R. 135 at 13.) Under the text of this section, the Court looks to a provision of the IWCA, 820 ILCS 305/3, to see if Chicago is indeed automatically covered by the ODA. Under this provision of the IWCA, "employees of other political units [including cities] are covered only if they engage in the designated extra hazardous enterprises, or if the employing unit has elected to be bound by the other provisions of the act." *Winnebago Cnty. v. Indus. Comm'n*, 215 N.E.2d 258, 259 (Ill. 1966). In matters of Illinois law, the Court "must follow the state's highest court's interpretation of its own state law." *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001).

Thus, the mandatory coverage provision of the ODA only applies to Chicago employees engaged in the listed "extra hazardous enterprises" in the IWCA, which does not include police work. 820 ILCS 305/3; 310/2(a). Accordingly, the ODA's

6

exclusive remedy provision does not apply here, and Chicago's motion for summary judgment on this ground is denied.

### C. The ODA Does Not Bar Plaintiff's IHRA Claim.

Chicago also argues that the plaintiff's IHRA claim is preempted by the exclusive remedy provision of the ODA. (R. 135 at 33.) As discussed *supra*, the ODA does not apply here and therefore does not bar the plaintiff's claim under the IHRA.

### D. The Plaintiff Adequately Exhausted her Claims before the EEOC and IDHR.

Chicago's final preemption arguments concern administrative exhaustion of the plaintiff's ADA and IHRA claims. The main point of both arguments is fundamentally the same: because Officer DiFranco failed to initiate administrative proceedings before the EEOC and IDHR prior to his death, his estate cannot bring claims under the ADA or IHRA. (R. 135 at 19–23.) Chicago is re-raising arguments it raised previously in its Motion to Dismiss, asserting that the Court deferred ruling on these arguments until summary judgment. (R. 135 at 20.) Chicago is partially correct. The Court did defer a ruling on the IDHR argument until now, but found the EEOC charge could be properly brought by the estate. *DiFranco*, 589 F. Supp. 3d at 915. However, there is a difference between holding that the estate *could* file and pursue an EEOC charge and ADA claim, and finding that the estate *did* so properly. The Court will now consider whether the plaintiff properly exhausted the ADA and IHRA claims.

Before suing under the ADA, a plaintiff must exhaust her administrative remedies by filing a timely charge before the EEOC. *Stepney v. Naperville Sch. Dist.*

7

*203*, 392 F.3d 236, 239 (7th Cir. 2004). The EEOC can bring a suit of its own initiative or issue the plaintiff a "right-to-sue" letter. 42 U.S.C. § 2000e-5(f); *see also Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019).[2] Once a "right-to-sue" letter has issued, the plaintiff has exhausted her administrative remedies and may bring suit. *Chaidez*, 937 F.3d at 1004. Under the IHRA, a timely EEOC charge also serves as a timely IDHR charge, and an EEOC right-to-sue letter gives the plaintiff the right to bring a state law civil suit. 775 ILCS 5/7A–102(A-1)(1), (3).

Here, it is undisputed that the plaintiff filed a timely EEOC charge, and the EEOC issued a "right-to-sue" letter. (DSOF ¶¶ 1–4.) The plaintiff appropriately exhausted her administrative remedies before suing and her claims are properly before this Court. *See Chaidez*, 937 F.3d at 1004.

## II. DEFENDANT'S ARGUMENT FOR SUMMARY JUDGMENT ON THE MERITS

### A. Defendant is Entitled to Summary Judgment on Counts I and III.

As previously noted, the plaintiff brings a failure to accommodate claim under both the ADA (Count I) and the IHRA (Count III). (R. 1 at 10, 14.) "Because Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework" the Court will address summary judgment for the plaintiff's ADA and IHRA claims together. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022). A failure to accommodate claim requires a showing that 1) Officer DiFranco was a qualified individual with a disability, 2) Chicago was aware of his disability,

---

[2] The ADA expressly incorporates the enforcement provisions of Title VII at § 2000e-5(f). *Stepney*, 392 F.3d at 239.

and 3) Chicago failed to accommodate his disability. *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016). Chicago argues that since it offered Officer DiFranco a reasonable accommodation, it cannot be liable for a failure to accommodate claim under the ADA or IHRA. (R. 135 at 23–26.)[3] Plaintiff disputes that Chicago offered Officer DiFranco an accommodation. (R. 147 at 19–21.)

It is not disputed that Officer DiFranco submitted a request for accommodation at 4:33 p.m. on Thursday, March 19, 2020. (PSOF ¶ 38; DSOF ¶ 55.) This request was reviewed by CPD's medical section that evening, which designated him at "high risk" due to COVID-19. (DSOF ¶ 56; PSOF ¶ 43.) Chicago presents the deposition testimony of Captain Sanchez and Sergeant Vanek to establish it offered Officer DiFranco a reasonable accommodation, which he accepted. (R. 135 at 25.) The plaintiff does not put forward contrary testimony; instead, she resists summary judgment by casting doubt on Captain Sanchez and Sergeant Vanek's truthfulness. (R. 147 at 22–23).

Captain Sanchez testified that Officer DiFranco came to see him on Monday, March 23, 2020 to inquire about possible accommodations; Captain Sanchez told Officer DiFranco that the CPD would reassign him as desired, but Officer DiFranco said he preferred to take an alternative assignment from Sergeant Vanek, his direct supervisor. (R. 134-9 ("Sanchez Dep.") at 124:13–136:22.) Sergeant Vanek testified that the entire narcotics squad was assigned one-man cars, monitoring city

---

[3] Chicago does not dispute Officer DiFranco was a qualified individual with a disability nor that it knew of Officer's DiFranco's disability. (DSOF ¶¶ 9, 55)

9

infrastructure. (R. 134-11 ("Vanek Dep.") at 23:10–21, 28:17-29:3, 31:7–32:8, 120:2–124:8.)

The plaintiff challenges the accuracy of Captain Sanchez's and Sergeant Vanek's testimony. According to the plaintiff, accommodations related to COVID-19 were handled by Director Landowski and Chief O'Donnell, neither of whom ever discussed alternative work assignments with Officer DiFranco. (R. 147 at 18–19.) Therefore, the plaintiff argues that a fact dispute exists as to whether Captain Sanchez or Sergeant Vanek offered, or could have offered, Officer DiFranco the alleged alternative work assignment in a one-man car. (R. 147 at 22–23.) But the plaintiff is not suing Chicago for failing to follow its own internal procedures, but for violating the ADA. Under the ADA, the ends, not the means, are what matter. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014). Here, the uncontroverted testimony of multiple witnesses is that Officer DiFranco requested, received, and accepted an accommodation, in the form of a one-man car and a job monitoring city infrastructure, alongside the rest of his narcotics squad. (Sanchez Dep. 124:13–136:22; Vanek Dep. 120:2–124:8). This is sufficient to satisfy the ADA. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005).

The plaintiff also asserts that a material dispute of fact exists because documentation of meetings between Officer DiFranco and his superiors to discuss accommodations were not created until after his death. (R. 147 at 22–23.)) In her view, because certain conversations were not documented until after-the-fact, they did not occur. (*Id*.) Therefore, she argues, a "reasonable jury" could conclude Chicago

10

failed to accommodate Officer DiFranco and lied about it "after-the-fact." (*Id*. at 23). Yet, critically, the plaintiff presents no evidence to cast doubt on the testimony of Captain Sanchez or Sergeant Vanek, only speculation. (*Id*.) Without more, challenges to a witness's credibility are insufficient to survive summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Last, the plaintiff asserts a material dispute of fact exists because Commander Kimble and Risk Manager Morris testified that Officer DiFranco was working normal narcotics duties until his illness and eventual death. (R. 147 at 24.) Morris testified that, in March of 2020, the Narcotics Division was still functioning normally. (PSOF ¶ 70, (citing 134-12 ("Morris Dep.") at 82:23–86:7.) But the full context of the questioning does not clarify whether Morris was referring to before or after Officer DiFranco's request for an accommodation. (Morris Dep. 82:23–86:7.) Thus, Morris's testimony does not support an inference that Officer DiFranco was still assigned his normal duties after he requested an accommodation. "Summary judgment is the 'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). The non-moving party must do more than show a "metaphysical doubt" as to the facts established by "a properly supported motion for summary judgment." *Id*. She must provide "evidence on which the jury could reasonably find in favor of the nonmoving party." *Id*. Here, Morris's vague and unclarified statement about Officer DiFranco's narcotics duties is not such evidence. Chicago put forth a motion for summary judgment supported by the testimony of Sergeant Vanek and Captain Sanchez that Officer DiFranco was provided a reasonable accommodation as of March

11

23, 2020. (R. 135 at 7-8; *see also* Sanchez Dep. 124:13–136:22; Vanek Dep. 120:2–124:8). Morris's statement about March 2020 generally, without a specific date, does not create a material dispute of fact.

Similarly, Commander Kimble testified that, on March 19, 2020, Officer DiFranco was working his normal narcotics duties. (R. 134-6 ("Kimble Dep.") at 38:9–39:22.) This testimony does not create a dispute of fact regarding Chicago's accommodation of Officer DiFranco, because Officer DiFranco did not request an accommodation until the afternoon of March 19, 2020. (PSOF ¶¶38–40.) Thus, it is not at all surprising, nor liability inducing for Chicago, that on and prior to March 19, 2020, he was engaged in his normal assigned duties. *See Sears, Roebuck & Co.*, 417 F.3d at 803 (The employee bears the initial duty to notify his employer of his disability and desire for accommodation).

For these reasons, summary judgment is appropriate for Chicago on the plaintiff's ADA and IHRA claims (Counts I and III).

### B. Chicago Is Entitled to Summary Judgment on Count V.

The plaintiff alleges Chicago engaged in "willful and wanton misconduct" when it failed to provide Officer DiFranco with an accommodation, making Chicago liable for his death under the IWDA (Count V). (R. 1 ¶¶ 123–25; *see also* R. 147 at 23 ("[C]hoosing not to accommodate Marco and lie about it after-the-fact is a textbook example of willful and wanton conduct, which makes the defendant liable for Marco's death under the Wrongful Death Act.").) This alleged failure resulted in Officer DiFranco's exposure to COVID-19, causing his eventual illness and death. (*Id.*) As

12

part of her argument against summary judgment, the plaintiff asserts that Chicago wrongly backdated a COVID-19 exposure report alleging Officer DiFranco was exposed to COVID-19 on the morning on March 19, 2020 while in an elevator at the police station where he worked. (*Id.*) Chicago argues that no evidence supports a causal link between the alleged wrongful conduct and Officer DiFranco's exposure to COVID-19, making summary judgment appropriate on this count. (R. 135 at 16–17.) The Court agrees with Chicago.

The plaintiff posits that, because the COVID-19 exposure report concerning Officer DiFranco was backdated, a reasonable jury could find Chicago knowingly failed to accommodate Officer DiFranco, causing him to be exposed to COVID-19 and resulting in his death. (R. 147 at 22–23.) Yet, if the March 19 exposure report is false, then there is no evidence in the record that explains how or when Officer DiFranco was exposed to COVID-19, which is crucial to plaintiff's claim. Summary judgment on an IWDA claim is appropriate for the defendant when the "plaintiff fails to establish [(1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused decedent's death; and pecuniary damages arising therefrom to persons designated under the Act] from the papers on file." *Leavitt v. Farwell Tower Ltd. P'ship*, 625 N.E.2d 48, 52 (Ill. App. Ct. 1993). Without at least some evidence of how or when Officer DiFranco was exposed to COVID-19, the plaintiff cannot establish that Chicago breached a duty to Officer DiFranco, nor that any such breach proximately caused Officer DiFranco to die from COVID-19.

And, if the March 19 exposure report is accurate, the plaintiff still cannot connect Officer DiFranco's exposure to COVID-19 to willful and wanton misconduct by Chicago. According to the report, Officer DiFranco was exposed to COVID-19 around 10:00 a.m. on March 19. (R. 130-2 at 56.) It is not disputed that Officer DiFranco submitted an accommodation request later that same day, at 4:33 p.m. (PSOF ¶38; DSOF ¶ 52) Because he did not request an accommodation until after the alleged exposure, a failure to accommodate, no matter how willful and wanton, cannot be the cause of his exposure to COVID-19.

Accordingly, summary judgment is appropriate for Chicago on the plaintiff's Illinois Wrongful Death Act claim (Count V).

### III. THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff moved for summary judgment on her ADA claim (Count I). (R. 132). Because the Court grants summary judgment to Chicago on Count I, the plaintiff's cross motion is denied.

### CONCLUSION

The defendant's Motion for Summary Judgment [129] is GRANTED and the plaintiff's Motion for Summary Judgment [132] is DENIED for the reasons given in this order. Civil case terminated.

Date: November 8, 2024

JEREMY C. DANIEL
United States District Judge